PAUL BATTLE *et al.*, Plaintiffs-Appellants, *v.* ILLINOIS CIVIL SERVICE COMMISSION *et al.*, Defendants-Appellees.

First District (1st Division)   No. 78-1143

Opinion filed November 13, 1979.

Ellis E. Reid, of Chicago, for appellants.

William J. Scott, Attorney General, of Chicago (Russell C. Grimes, Jr., Assistant Attorney General, of counsel), for appellees.

Mr. JUSTICE O'CONNOR delivered the opinion of the court:

Plaintiffs were discharged from employment with the Illinois Department of Labor, Bureau of Employment Security (Department), after a consolidated hearing before the Illinois Civil Service Commission (Commission) (Ill. Rev. Stat. 1975, ch. 127, par. 63b111). On July 7, 1976, Local 1006 of the American Federation of State, County, and Municipal Employees (AFSCME) went on strike against the Department. Plaintiffs were officers and members of that union. They filed a complaint for administrative review of the Commission's decision in the circuit court of Cook County. (Ill. Rev. Stat. 1975, ch. 110, pars. 264-279.) The circuit court affirmed the discharge and plaintiffs appeal.

Twenty-two of the 23 plaintiffs were discharged for participation in an illegal strike, unauthorized absence for five consecutive work days, and withholding of services. The remaining plaintiff, Willie Newell, was discharged for excessive absenteeism. His discharge will be treated separately below. Plaintiffs do not assert that the Commission's determination is against the manifest weight of the evidence. Thus, only a short statement of the facts is necessary. Additional facts will be stated in connection with plaintiffs' contentions.

At the hearing, Ray Tillman, Executive Assistant to the Administrator of the Illinois Bureau of Employment Securities, testified that after the third day of the strike (on or about July 10, 1976), mailgrams were sent to the strikers requesting they return to work. On July 13 the Department suspended, pending discharge, those employees who had been absent for five consecutive work days. The striking employees were also notified of a meeting on July 16 at the Hyatt Regency Hotel. Employees were interviewed concerning reasons for their absences. Similar meetings were subsequently held at the Midland Hotel on July 23. Tillman testified that the interviews were not considered to be presuspension hearings under Rule 3400 of the State Time and Leave Policy Manual. Striking employees were only permitted to have a union or legal representative attend as an observer. The local union objected to this denial of representation. In protest, most of the employees signed union strike leaflets to show their attendance and walked out.

During the strike, Tillman received reports from the local offices regarding absent employees. Following the Midland Hotel meeting, Tillman prepared a chart based on the local office reports regarding employees who were absent for five consecutive work days. The chart also indicated those employees charged with instigating the strike or engaging in picket line misconduct. Tillman indicated that the chart

might not be accurate in every instance because of information received subsequently. The chart was submitted for the limited purpose of showing that the Department attempted to compile information on individual strikers.

On July 28, 1976, the Director of the Department of Labor initiated discharge proceedings against all personnel who had been absent from work for more than five consecutive work days without prior authorization. Over 280 employees, including the instant plaintiffs, were discharged initially. Most of the striking employees had their discharges converted to suspensions as a result of a strike settlement agreement between the AFSCME International Union and the State. Thirty-three employees, including the instant plaintiffs, remained discharged because the chart indicated they had engaged either in instigation of the strike or in picket line misconduct, or both.

On March 14, 1977, the hearing officer found that, except for Willie Newell, plaintiffs either instigated, observed or promulgated the illegal strike in July of 1976 against the Department. On March 16, 1977, the Commission affirmed the hearing officer's decision. It also found the record showed that Willie Newell's excessive absenteeism warranted discharge. The circuit court affirmed the Commission's decision. We affirm the circuit court order.

Plaintiffs raise several contentions upon appeal: (1) striking does not constitute cause for discharge absent a specific Department rule; (2) they were denied equal protection of law because differing punishments were imposed upon striking employees; (3) they were denied due process of law because of a conspiracy between the State and the AFSCME International Union leadership to oust selected local union officials, using the strike as a pretext; (4) hearings at the Hyatt Regency and Midland Hotels were not presuspension hearings as required by rule and were otherwise improper; (5) filing of amended charges by the Attorney General denied plaintiffs due process; (6) discharge for mere participation in the strike through picketing violates the first amendment; and (7) defects in the appointment of I. Lawrence Richardson make his actions in discharging plaintiffs a nullity.

Findings of an administrative agency are prima facie true and correct. (Ill. Rev. Stat. 1975, ch. 110, par. 274.) On administrative review, the court's function is to determine whether the agency's findings are supported by substantial evidence and are not contrary to the manifest weight of the evidence. (*Davis v. Retirement Board of Policemen's Annuity Fund* (1975), 30 Ill. App. 3d 318, 332 N.E.2d 446.) To conclude that findings are against the manifest weight of the evidence, the court must be satisfied that an opposite conclusion is clearly evident. *Kelly v. Police Board* (1975), 25 Ill. App. 3d 559, 323 N.E.2d 624.

■■■ An additional inquiry upon review is whether a charge is sufficient cause for discharge. This issue is generally for the Commission to determine (*Caliendo v. Goodrich* (1975), 34 Ill. App. 3d 1072, 340 N.E.2d 560), and its finding of cause may not be overturned unless trivial, arbitrary or unreasonable. (*Hardaway v. Civil Service Com.* (1977), 52 Ill. App. 3d 494, 367 N.E.2d 778.) Although not defined in the Personnel Code, "cause" has been construed to be some substantial shortcoming which renders an employee's continuation in office detrimental to the discipline and efficiency of the service and which law and public policy recognize as good cause for dismissal. *Parkhill v. Illinois Civil Service Com.* (1978), 58 Ill. App. 3d 291, 374 N.E.2d 254.

■■ Although plaintiffs raise no contentions specifically concerning Willie Newell's discharge, we have examined the record as it relates to him and find that the Commission's findings are not contrary to the manifest weight of the evidence. Newell's absence of more than one-half of a two-month work period is uncontroverted. Moreover, his absence for at least three days during the work stoppage is supported by competent evidence. Additionally, since neglect of duty constitutes just cause for discharge (see *People ex rel. Carroll v. Durkin* (1935), 280 Ill. App. 510), Newell's excessive absenteeism warrants that sanction.

■■ The main contention of the remaining plaintiffs is that public employees may not be discharged for striking absent a specific Department rule to that effect. We believe that *Strobeck v. Illinois Civil Service Com.* (1979), 70 Ill. App. 3d 772, 388 N.E.2d 912, *appeal denied* (1979), 76 Ill. 2d, is dispositive of this issue. *Strobeck* concerned the discharge of another employee who participated in the same illegal strike against the Department. The appellate court held that "public employees have no protected right to engage in a strike" and that "unauthorized absence from employment due to participation in a work stoppage was cause for discharge." (70 Ill. App. 3d 772, 778, 388 N.E.2d 912, 917.) Notice via a specific Department regulation that striking employees are subject to discharge proceedings is not necessary in light of the line of cases holding that public employees have no right to strike. See *Strobeck*, 70 Ill. App. 3d 772, 778, 388 N.E.2d 912, 917.

■■ Furthermore, *Strobeck* rejects plaintiffs' argument that they were deprived of equal protection because differing punishments were imposed upon striking employees. We note that the Department had just cause to discharge all 280-plus employees who engaged in the strike. Under the compromise agreement between the Department and the International Union, all but 33 of the dismissed employees had their discharges converted into suspensions. Employees who engaged in strike instigation or in picket-line misconduct remained discharged in order to deter future strikes. The Department decided to reinstate the vast

majority of the strikers in order to maintain a work force. We concur with the reasoning of *Strobeck* that this classification of strikers was rationally related to the fulfillment of legitimate State purposes, served to benefit the public and did not offend equal protection.

■■ Plaintiffs also allege they were denied due process of law because the State and the International Union conspired to oust selected local union officials who were not supportive of the International Union president. They base their contention on the third amended complaint of a pending Federal lawsuit in the Northern District of Illinois, Eastern Division, and the deposition of Neal Bratcher, vice president of the International Union of AFSCME in that suit. Neither of these documents is properly before us because they are not part of the record before the Civil Service Commission. Appellate review is confined to the record established before the Civil Service Commission. We may not consider new or additional evidence in support of or in opposition to the agency's findings and decision. Ill. Rev. Stat. 1975, ch. 110, par. 274; *General Electric Co. v. Illinois Fair Employment Practices Com.* (1976), 38 Ill. App. 3d 967, 349 N.E.2d 553.

■■ Moreover, defenses not presented to the administrative agency may not be considered upon review. *Gordon v. Department of Registration & Education* (1970), 130 Ill. App. 2d 435, 264 N.E.2d 792.

Plaintiffs point out that this court has the power under section 12 of the Administrative Review Act (Ill. Rev. Stat. 1975, ch. 110, par. 275(1)(g)) to remand the case to the Commission for the taking of additional evidence. (*Sola v. Clifford* (1975), 29 Ill. App. 3d 233, 329 N.E.2d 869.) That section also provides in pertinent part:

"* * * However, no remandment shall be made on the ground of newly discovered evidence unless it appears to the satisfaction of the court that such evidence has in fact been discovered subsequent to the termination of the proceedings before the administrative agency and that it could not by the exercise of reasonable diligence have been obtained at such proceedings; and that such evidence is material to the issues and is not cumulative." (Ill. Rev. Stat. 1975, ch. 110, par. 275(a)(1).)

Plaintiffs have failed to demonstrate that evidence of conspiracy "could not by the exercise of reasonable diligence" have been presented at the Commission hearing.

Accordingly, we decline to consider the Federal litigation record or to remand for the presentation of new evidence on this issue.

■■ Plaintiffs next argue that they initially were subject to suspension of less than 30 days and thus qualified for a presuspension hearing under Department of Personnel Rule 3400. The Department concedes that hearings provided at the Hyatt Regency and Midland Hotels were not

presuspension hearings. If plaintiffs were suspended for a period of more than 30 days, the Personnel Code provides the right to a Commission hearing. (Ill. Rev. Stat. 1975, ch. 127, par. 63b111.) The record indicates, however, that plaintiffs were suspended pending discharge. Their right to a full hearing prior to discharge obviated the necessity for a presuspension hearing. (See Ill. Rev. Stat. 1975, ch. 127, par. 63b111.) A presuspension hearing was not constitutionally required because:

> " '* * * [N]o hearing at the preliminary stage is required by due process so long as the requisite hearing is held before the final administrative order becomes effective.' * * *'"

*Mitchell v. W. T. Grant Co.* (1974), 416 U.S. 600, 612, 40 L. Ed. 2d 406, 416, 94 S. Ct. 1895, 1902, quoting *Ewing v. Mytinger & Casselberry, Inc.* (1950), 339 U.S. 594, 598, 94 L. Ed. 1088, 1093, 70 S. Ct. 870, 872.

■■ Plaintiffs also complain of procedures implemented by the Department at the hotel meetings. Specifically, they allege that they were forced to choose between waiving their right to legal representation and a chance to get their jobs back. The record before us shows that the striking employees were notified by mailgrams of the Hyatt Regency Hotel meeting. A similar meeting was subsequently scheduled at the Midland Hotel. The purpose of the meetings was to afford the employees an opportunity to explain their absences. At these hotel meetings, the striking employees were only permitted to have a union or legal representative attend as an observer.

Plaintiffs allege that they were denied due process because those employees who "broke rank" and went into the interview without legal counsel obtained their jobs back. We disagree. First, it does not appear that these informal, conciliatory interviews constituted critical stage hearings necessitating the advocacy of counsel, since the interviews were not presuspension hearings and no right to counsel existed. Second, two of the plaintiffs, Carmen Cosme and Willie Newell, participated in the interviews, yet were discharged. Thus, the record negates plaintiffs' assertion that attending the interview without representation assured that an employee would not be discharged.

Plaintiffs' reliance on *Olshock v. Village of Skokie* (N.D. Ill. 1976), 411 F. Supp. 257, *aff'd* (7th Cir. 1976), 541 F. 2d 1254, is misplaced. In *Olshock*, the court held that defendants had denied plaintiffs due process and equal protection by giving favored striking police officers notice that they would not be discharged if they returned to work on July 13, 1975. Plaintiffs did not receive such notice. The court also found plaintiffs had been punished for exercising their right to be represented by counsel throughout the Board hearings. Thirty-four police officers who were discharged had appeared with counsel, while 20 who were suspended had not.

In the instant case, mailgrams were sent to all employees requesting their return to work. None of the striking employees received preferential notice. No employees were allowed attorney or union advocates at the informal hotel meetings; plaintiffs had no right to counsel.

Plaintiffs next contend that the Attorney General's filing of amended charges did not comport with Department of Personnel Rules. The pertinent sections read:

"§2—720 *DISCHARGE OF CERTIFIED EMPLOYEE*—The agency head or his designee may initiate discharge of a certified employee by filing written charges for discharge with the Director in the form and manner prescribed by the Director. Written charges shall be signed by the head of the agency, and shall contain a clear and concise statement of facts showing good cause for discharge, and shall be accompanied by a copy of the employee's performance record. No discharge of a certified employee shall be effective without the approval of the written charges for discharge by the Director."

"§2—730 *NOTICE TO EMPLOYEE*—Notice of approved charges for discharge shall be served on the employee by the Director, in person, or by certified mail, return receipt requested, at the employee's last address appearing in the personnel file."

The record establishes that written charges for discharge, signed by the agency head and accompanied by performance records, were submitted to and approved by the Director of Personnel. The Director served plaintiffs with notice of the approved charges by certified mail. Thus, the State complied with the rules for initiating discharges.

The Attorney General's motions to amend the charges were delivered to plaintiffs' attorney on September 7, 1976, and were filed with the Commission on September 8, 1976. The motions contained both the original and amended charges. The hearing officer ruled that if plaintiffs' counsel needed additional time because of the amended charges, he would grant a continuance. On September 29, 1976, "Director approved" amended charges were filed with the Commission.

We view plaintiffs' objections as threefold: (1) plaintiffs received no certified mailing of the amended charges; (2) the Attorney General did not have authority to file amended charges on behalf of the Department of Labor; and (3) the "Director approved" amended charges were not received by the Commission until 20 days after the hearing commenced.

■■ First, we note that plaintiffs received adequate notice of the initial charges via certified mail. The Personnel Rules do not expressly require that amended charges also be served by certified mail. We will not infer such a requirement where the employees had actual notice of the amended charges against them and adequate time to prepare their

defenses, because the hearing officer would allow a continuance. Notice is adequate where defendant is clearly apprised of the claims against him and where he can foresee the possible effects of the proceedings. (*Hyon Waste Management Services, Inc. v. City of Chicago* (1977), 53 Ill. App. 3d 1013, 1018, 369 N.E.2d 179.) We find no constitutional infirmity attendant to notification of the amended charges.

■■ Second, the Attorney General has the duty "[t]o institute and prosecute all actions and proceedings in favor of or for the use of the state, which may be necessary in the execution of the duties of any state officer." (Ill. Rev. Stat. 1975, ch. 14, par. 4.) He is the legal advisor of executive officers, commissions, boards and departments of State government. (*Fergus v. Russel* (1915), 270 Ill. 304, 110 N.E. 130.) The Attorney General was, therefore, required by law to litigate the discharge proceedings against plaintiffs. His duties as counsel included the concomitant power to amend charges as needed.

■■ Finally, we find that amendment of the charges by the Attorney General was proper where the Director approved the amendments prior to plaintiffs' discharge. Section 2—720 of the Department of Personnel Rules provides: "No discharge of a certified employee shall be effective without the approval of the written charges for discharge by the Director." The Director's approval of the amended charges was filed with the Commission after the hearings had commenced but prior to discharge. Accordingly, we find that the procedures utilized neither contravened the Personnel Rules nor deprived plaintiffs of due process.

■■ Plaintiffs raise the issue whether discharge for mere participation in the strike through picketing violates the first amendment. This argument is ill-conceived. Picketing may be both a means of communication and a means of economic coercion. The former is protected from State interference by the constitutional guarantee of free speech, while the latter is subject to regulation. (*Twin City Barge & Towing Co. v. Licensed Tugmen's & Pilots' Protective Association of America* (1964), 48 Ill. App. 2d 1, 197 N.E.2d 749.) As noted above, plaintiffs were discharged for participation in an illegal work stoppage (*Strobeck*) and not for the exercise of their first amendment rights. Participation in an illegal work stoppage and impeding the delivery of government services cannot be deemed protected conduct under the first amendment.

■■ Plaintiffs' final contention is that I. Lawrence Richardson's actions in discharging plaintiffs are a nullity because of defects in his appointment. Richardson was appointed to the position of Employment Security Administrator and, as such, was subject to the Personnel Code. (Ill. Rev. Stat. 1975, ch. 48, par. 610.) Assuming *arguendo* that Richardson may have been improperly appointed, we do not believe his actions were a nullity. We concur with the reasoning of the hearing officer:

"[T]he determination of the nature of the relationship between the Bureau of Employment Security and Richardson is irrelevant to the effect of Richardson's discharge of the Respondents. The Department of Labor designated Richardson as its agent and gave him certain managerial powers. Any defect in Richardson's appointment, under the Personnel Code, does not negate the acts that Richardson performed * * *."

For the aforementioned reasons, the order of the circuit court of Cook County upholding plaintiffs' discharges is affirmed.

Affirmed.

GOLDBERG, P. J., and McGLOON, J., concur.