DENNIS D. MURDY, Plaintiff-Appellee, *v.* JIM EDGAR, Secretary of State, Defendant-Appellant.

Fourth District   No. 4—83—0166

Opinion filed September 27, 1983.

Neil F. Hartigan, Attorney General, of Springfield (Frederic D. Tannenbaum, Assistant Attorney General, of counsel), for appellant.

Louis E. Miller, of Frings, Bagley, Atherton & Clark, of Pekin, for appellee.

JUSTICE TRAPP delivered the opinion of the court:

The Secretary of State appeals the order of the circuit court of Sangamon County upon administrative review which reversed and remanded a decision denying reinstatement of plaintiff's driving privileges and in the alternative, a restricted driving permit. We affirm.

On October 11, 1979, plaintiff was arrested for the second time for driving under the influence of alcohol. (See Ill. Rev. Stat. 1981, ch. 95½, par. 11—501.) His first arrest and conviction occurred in 1973. Following plaintiff's second conviction an order of revocation was entered by the Secretary in accordance with statute. Ill. Rev. Stat. 1981, ch. 95½, par. 6—206(a)(1).

On May 13, 1982, the cause was set for hearing before the Secretary to determine whether plaintiff's privilege to drive should be reinstated or whether the Secretary should grant plaintiff a restricted driving permit. At the hearing, plaintiff's driving record was admitted, and the testimony of plaintiff and his wife was considered. Plaintiff also offered, without objection, letters of recommendation from friends, co-workers, his pastor, and a counselor at the Tazewood Center for Human Services, a not-for-profit agency which provides alcoholism and drug counseling. No evidence was offered by the Secretary other than plaintiff's driving record. By written order the Secretary denied plaintiff reinstatement of his privilege to drive and a restricted driving permit. The trial court in administrative review reversed the Secretary and remanded for the issuance of either a driving permit or a driver's license.

Since the issue raised by the parties is whether the Secretary's decision is against the manifest weight of the evidence, a detailed discussion of the facts is necessary.

Plaintiff is 32 years of age, married and employed at Caterpillar Tractor Company. Plaintiff testified that he began drinking at age 16 or 17 with high school peers although his drinking was confined to

weekends. His first conviction for driving under the influence occurred at age 21 and was characterized as attributable to being "young and foolish." Plaintiff admitted that he continued to drink although he did not believe that it was a problem. Prior to his second conviction, plaintiff's drinking increased in frequency because of mounting personal and financial pressure resulting from a strike at Caterpillar, and the loss of a recently acquired farm. At the time of the hearing, plaintiff's wife acknowledged that similar pressures still face plaintiff. From July 27, 1981, until October 27, 1981, plaintiff was issued a restricted driving permit. Following the 1979 conviction, plaintiff received no other convictions for Vehicle Code violations, but his record does indicate a 1973 conviction for driving with an invalid license and a 1977 conviction for speeding.

Plaintiff stated that following his second conviction he joined a church group, became involved with a prison ministry and enrolled in a counseling program. Entered into the record were records from the Tazewood Center for Human Services certifying plaintiff's successful completion of a "DUI school" and favorable results from an alcoholism screening and remedial educational program. Plaintiff's alcohol counselor noted that plaintiff had not drunk since December of 1981 and stated that the return of plaintiff's license would be a "positive move." Numerous other letters vouched for plaintiff's good character and made similar recommendations. Plaintiff stated that the last time he was intoxicated was in mid-1980 and that the last time he had anything to drink was on Christmas of 1981. Plaintiff's testimony was substantially corroborated by his wife. Other evidence indicated that plaintiff resided eight miles from work and that his wife was responsible for his transportation.

The Secretary's order concluded that he "was not satisfied after investigation of the petitioner that to grant the privilege of driving a motor vehicle on the highways will not endanger the public safety."

Our review as well as that of the trial court is limited to determining whether the findings and conclusion of the administrative body are against the manifest weight of the evidence. (*Eastman Kodak Co. v. Fair Employment Practices Com.* (1981), 86 Ill. 2d 60, 426 N.E.2d 877.) Section 3—110 of the Code of Civil Procedure provides that "[t]he findings and conclusions of the administrative agency on questions of fact shall be held to be prima facie true and correct." (Ill. Rev. Stat. 1981, ch. 110, par. 3—110.) The scope of review does not extend to reweighing the evidence or making independent investigations of fact, but the findings of the administrative body must rest upon competent evidence and be supported by substantial proof. *Men-*

*ning v. Department of Registration & Education* (1958), 14 Ill. 2d 553, 153 N.E.2d 52.

■■ We turn first to the trial court's order directing the Secretary to issue plaintiff a restricted driving permit. Plaintiff's 1979 conviction for driving under the influence resulted in an automatic revocation of his driver's license pursuant to section 6—205(a)(2) of the Illinois Vehicle Code, although the Secretary revoked plaintiff's license under discretionary authority contained in section 6—206(a)(1). (Ill. Rev. Stat. 1981, ch. 95½, pars. 6—205(a)(2), 6—206(a)(1).) Both sections 6—205 and 6—206 contain authority for the issuance of a restricted driving permit by the Secretary. Section 6—206(c)(3) provides as follows:

"At the conclusion of a hearing pursuant to Section 2—118 *** the Secretary *** shall either rescind or continue an order of revocation or shall substitute an order of suspension therefor; or, good cause appearing therefor, rescind, continue, change or extend his order of suspension. If the Secretary of State does not rescind his order, he may upon application therefor, to relieve undue hardship, issue a restricted driving permit granting the privilege of driving a motor vehicle between the residence and the place of employment of such person or within other proper limits. In each case the Secretary may issue such restricted driving permit for such period as he deems appropriate, except that such permit shall expire within one year from the date of issuance. A restricted driving permit issued hereunder shall be subject to cancellation, revocation and suspension by the Secretary of State in like manner and for like cause as a drivers license issued hereunder may be cancelled, revoked or suspended; except that a conviction upon one or more offenses against laws or ordinances regulating the movement of traffic shall be deemed sufficient cause for the revocation, suspension or cancellation of a restricted driving permit. The Secretary of State may, as a condition to the issuance of a restricted driving permit, require the applicant to participate in a designated driver remedial or rehabilitative program." Ill. Rev. Stat. 1981, ch. 95½, par. 6—206(c)(3).

Granting a restricted driving permit is permissive and not mandatory, and before a restricted permit is issued, the Secretary must weigh the public interest against the hardship suffered by the applicant. (*Foege v. Edgar* (1982), 110 Ill. App. 3d 190, 441 N.E.2d 1267.) Presumably this weighing was done in 1981 when the Secretary issued plaintiff a restricted driving permit. The present circumstances

equally favor the issuance of a restricted driving permit by the Secretary. Plaintiff's evidence indicated without contradiction that plaintiff had no traffic convictions during the period following his 1979 conviction, that plaintiff enrolled in and successfully completed an alcohol counseling program, and that plaintiff had abstained from any alcohol for some six months prior to the hearing. In support of the Secretary's position, his brief asserts that plaintiff never really refuted "his chronic alcoholism," that plaintiff scored 15 on the MAST "when common knowledge recalls 5 as borderline" and that plaintiff faces similar financial pressures today as existed when plaintiff was arrested the second time for driving under the influence.

■ The suggestion that plaintiff is a chronic alcoholic is simply unsupported by expert medical opinion or facts from which a lay person might so conclude. Aside from two convictions for driving under the influence within a 10-year period, and plaintiff's admission that he began drinking at age 16 or 17, there is no evidence of chronic alcoholism. The uncontradicted proof showed that plaintiff had not been intoxicated since mid-1980 and did not drink after Christmas of 1981. The evidence which was presented is insufficient to support a finding that plaintiff is a habitual drunkard to a degree which renders him incapable of safely driving a motor vehicle. Ill. Rev. Stat. 1981, ch. 95½, par. 6—103(4).

■ ■ The fact that plaintiff scored 15 on the "MAST" is not a subject of which we will take judicial notice. Judicial notice may be taken of facts which are of common and general knowledge and which are established and known within the limits of the jurisdiction of the court. (*Ashland Savings & Loan Association v. Aetna Insurance Co.* (1974), 18 Ill. App. 3d 70, 309 N.E.2d 293.) With respect to the MAST generally and plaintiff's score of 15 in particular, we are of the opinion that these are not of such common and general knowledge to meet the requirements for judicial notice. Plaintiff's score and its significance should have been presented through expert opinion and explanation.

■ Finally, the fact that plaintiff faces similar financial pressures as existed when plaintiff received his second ticket is entitled to consideration in weighing the danger to the public and the likely recurrence of plaintiff's actions. Equally entitled to consideration is the plaintiff's efforts at dealing with these pressures which were not mentioned in the Secretary's order. On balance, we conclude that the Secretary abused his discretion in denying plaintiff a restricted driving permit. We recognize that restoration of driving privileges is not an automatic matter (see *People v. Turner* (1976), 64 Ill. 2d 183, 354

N.E.2d 897), and that considerable discretion is given the Secretary (*Foege*), but agree with the trial court that the findings of the Secretary for denying a restricted driving permit are against the manifest weight of the evidence.

■ The trial court's ruling also directs the Secretary to consider full restoration to plaintiff of his driving privileges. Section 6—208 of the Illinois Vehicle Code directs that the Secretary shall not suspend a drivers license or privilege to drive a motor vehicle for longer than one year unless required by some other law. Subsection (b) directs that a person whose license has been revoked shall not be allowed a renewal or restoration of his license or permit but may make application for a new license after one year, or the removal of the cause prompting revocation. The final paragraph of section 6—208 concludes:

> "In either event, the Secretary of State shall not issue such license unless and until he is satisfied after investigation of such person that to grant the privilege of driving a motor vehicle on the highways will not endanger the public safety or welfare." Ill. Rev. Stat. 1981, ch. 95½, par. 6—208(b)(2).

The standard to be applied by the Secretary under section 6—208 of the Illinois Vehicle Code (Ill. Rev. Stat. 1981, ch. 95½, par. 6—208) is similar to that involved when issuing a restricted driving permit. (See *Foege*.) In each case the pertinent inquiry is the danger to the public in allowing the applicant to drive. Under sections 6—205 and 6—206, however, hardship is to be taken into consideration apart from public safety and welfare. Section 6—208 mandates no consideration of hardship to the applicant. A further difference is in the scope of rights granted. Under sections 6—205 and 6—206, a restricted driving permit may only be issued for driving between a residence and a place of employment or other proper limits. Relief under section 6—208 contains no limitations.

■ Our review of the record persuades us that the Secretary's conclusion that plaintiff would endanger the public safety and welfare is unsupported by substantial evidence in the record. Plaintiff has suffered the revocation of his license for approximately four years as a result of his second conviction for driving under the influence, three years from the date of the hearing. We recognize the Secretary's duty to insure the public safety and welfare but conclude that any presumption arising from the 1979 conviction that plaintiff would pose a danger to society is not sufficiently attenuated. This attenuation together with plaintiff's evidence that he recognizes the danger to society from combining alcohol and driving and evidence of his rehabilita-

tion persuades us that the trial court properly reversed the Secretary's decision as against the manifest weight of the evidence.

Finally, we note that the Secretary suggests that its determination is supported by several administrative standards. (See 92 Adm. Code sec. 1001.440(g) (1983).) The applicability and validity of these standards were neither argued below nor did they appear in the Secretary's initial brief filed in this court. Argument concerning their applicability appears for the first time in the Secretary's reply brief. By failing to raise this in his initial brief, the defendant is deemed to have waived this argument. *Department of Transportation v. Drobnick* (1977), 54 Ill. App. 3d 987, 370 N.E.2d 242; *People v. 123 Punch Boards* (1956), 8 Ill. 2d 520, 134 N.E.2d 763.

The order of the trial court reversing the Secretary's decision to deny plaintiff a restricted driving permit and directing the Secretary to grant plaintiff relief under section 6—208 of the Illinois Vehicle Code is affirmed (Ill. Rev. Stat. 1981, ch. 95½, par. 6—208). The cause is remanded to the Secretary for further proceedings consistent with this opinion.

Affirmed and remanded.

WEBBER, P.J., and MILLS, J., concur.