2021 IL App (1st) 192423-U

No. 1-19-2423

Order filed July 9, 2021

Sixth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| RITA LINTZERIS, STEVEN MORAITIS, WILLIAMS MORAITIS, ZARON JOSSELL, and CLARENCE DANIELS, individually and on behalf of all others similarly situated, | ) ) ) ) | Appeal from the Circuit Court of Cook County. |
| | ) | No. 17 CH 11365 |
| Plaintiffs-Appellants, | ) ) | |
| | ) | Honorable |
| v. | ) ) | Anna M. Loftus, Judge, Presiding. |
| CITY OF CHICAGO, a Municipal Corporation, | ) ) | |
| Defendant-Appellee. | ) | |

JUSTICE ODEN JOHNSON delivered the judgment of the court.
Presiding Justice Mikva and Justice Connors concurred in the judgment.

**ORDER**

¶ 1     *Held*:   We affirmed where: (a) Chicago's section 2-615 (735 ILCS 5/2-615 (West 2016)) motion was properly granted because plaintiffs' complaint failed to state a claim upon which relief could be granted because Chicago's impoundment ordinance was not preempted by section 11-208.7 of the Illinois Vehicle Code (625 ILCS 5/11-208.7 (West 2016)); (b) the circuit court could have properly denied discovery where plaintiffs sought information that was irrelevant to the legal issues raised in the motion to dismiss; and (c) the circuit court properly denied plaintiffs' leave to

file an amended complaint where they had no statutory right to amend after the circuit court granted the motion to dismiss.

¶ 2     Plaintiffs Rita Lintzeris (Lintzeris), Steven Moraitis (Steven)[1], William Moraitis (William), Zaron Jossell (Jossell), and Clarence Daniels (Daniels) (collectively plaintiffs), individually and as class representatives filed suit against the City of Chicago (Chicago) challenging Chicago's authority to enact an ordinance which authorized the assessment of administrative penalties on owners of impounded vehicles and established administrative hearing procedures. The circuit court granted Chicago's section 2-615 (735 ILCS 5/2-615 (West 2016)) motion to dismiss with prejudice, and plaintiffs appealed.

¶ 3     On appeal, plaintiffs contend that: (1) the impoundment order is preempted by section 11-208.7 of the Illinois Vehicle Code (Vehicle Code) (625 ILCS 5/11-208.7 (West 2016)); (2) Daniels was deprived of his right to a hearing; (3) the circuit court's stay of plaintiffs' limited discovery requests was an abuse of discretion; and (4) the circuit court erred in granting Chicago's motion to dismiss and in denying plaintiffs' motion for leave to amend.  For the following reasons, we affirm.

¶ 4                                    BACKGROUND

¶ 5     The underlying facts are not in dispute. Chicago enacted the impoundment ordinance in 1998, which allows it to impound vehicles under certain circumstances and impose administrative penalties based on the circumstances of the impoundment. The amount of the penalty varies based on the underlying violation; for example, $2000 when the vehicle contains or is used in the purchase of drugs; $2000 for driving under the influence of alcohol or other drugs; and $1000 for

_____

[1] Steven was dismissed on plaintiffs' counsel's request on November 13, 2017.

driving with a suspended license. After a vehicle is impounded, the owner may within 15 days request a preliminary hearing to be held within 48 hours. At the hearing, an administrative law officer (ALO) determines whether there was probable cause to support the underlying violation. If so, the impoundment continues until the penalty, fees, and any other traffic violation debts owed to Chicago are paid. If the ALO finds no probable cause, the vehicle is released.

¶ 6       Additionally, the impoundment ordinance requires Chicago to notify the owner within 10 days of impoundment by certified mail of the owner's right to request a full hearing to challenge the violation. The owner must submit a written request for hearing within 15 days after the notice was mailed or otherwise provided, and the hearing must be scheduled no more than 30 days after a request has been filed. At the hearing, Chicago must show, by a preponderance of the evidence, that the vehicle was used in the violation. If, however, Chicago does not meet its burden, the vehicle is returned, and any previously paid penalties and fees are refunded.

¶ 7       In cases where the violation is sustained, the ALO enters an order finding the owner liable for the penalties and fees. If the owner does not pay or request judicial review within 10 days, Chicago is authorized to dispose of the impounded vehicle and collect unpaid judgments. When the owner seeks judicial review, Chicago cannot dispose of the vehicle until 10 days after a final judgment is rendered in favor of it.

¶ 8       If an owner fails to request or attend a full hearing, the owner is deemed to have waived his or her right to a hearing and the ALO enters a default order against the owner. Chicago may then dispose of a vehicle 10 days after the ALO's default decision becomes final. Nevertheless, the impoundment ordinance also provides a procedure for setting aside a default.

¶ 9 The Vehicle Code covers a variety of subjects related to vehicles and allows for concurrent and additional regulation by home rule units in section 11-207 (625 ILCS 5/11-207 (West 2016)). In July 2011, the General Assembly enacted section 11-208.7, administrative fees and procedures, for impounding vehicles for specified violations, which became effective January 1, 2012.

¶ 10 On August 18, 2017, plaintiffs filed the instant case in the circuit court of Cook County, chancery division, on behalf of themselves and a class of vehicle owners who either paid administrative penalties or had judgments entered against them for such penalties under Chicago's impoundment ordinance.[2] Plaintiffs are owners of vehicles that were impounded between August 2016 and April 2017.

¶ 11 Lintzeris owns a vehicle that Chicago impounded after her son was involved in an accident and subsequently arrested for possessing illegal drugs and driving while intoxicated on April 24, 2016. Two days later, Lintzeris paid the applicable administrative penalties and fees totaling $4210 and retrieved her vehicle. A full hearing was held on August 17, 2016, and the impoundment was sustained.

¶ 12 William's vehicle was impounded after his son, Steven, was arrested for driving on a suspended license on March 5, 2017. A full hearing was held on August 14, 2017, where Steven appeared in William's stead pursuant to a power of attorney, and the impoundment was sustained. William did not allege that he paid an administrative penalty as a result of the impoundment.

_____

[2] Plaintiffs Lintzeris, Jossell and Daniels initially filed a nine-count complaint in federal court, raising fourth and fourteenth amendment challenges to the impoundment ordinance, as well as the state law claims raised in the circuit court. The federal claims were dismissed with prejudice on August 3, 2017; and the state claims were dismissed without prejudice. *Lintzeris v. City of Chicago*, 276 F. Supp. 3d 845, 852 (N.D. Ill. 2017).

¶ 13    Jossell owned a vehicle that was impounded when he was arrested for possession of a controlled substance on August 12, 2016. On August 17, 2016, he paid $2250 for the applicable penalty and fees and retrieved his vehicle. After a full hearing on October 17, 2016, the impoundment was sustained.

¶ 14    Daniels owned a vehicle that was impounded when he was arrested for driving while intoxicated on December 10, 2016. Daniels alleged that the notice he received from Chicago did not include the date, time and location of the hearing as required under the Illinois Vehicle Code (625 ILCS 5/11-208.7 (West 2016)). He further alleged that, because of the missing information, he did not appear for a hearing and a default judgment was entered against him. Daniels has not paid the penalty and fees required to retrieve his vehicle.

¶ 15    Count I of the complaint sought an order declaring that the impoundment ordinance was unenforceable and that all administrative findings of liability and defaults entered pursuant to the impoundment ordinance were null and void. Count II sought to enjoin Chicago from collecting any further administrative penalties. Counts IV and V claimed unjust enrichment and conversion and sought a refund of all administrative penalties Chicago had collected since 2012, as well as proceeds from the sale of impounded vehicles.

¶ 16    Chicago filed a motion to dismiss plaintiffs' complaint pursuant to section 2-619.1 (735 ILCS 5/2-619.1 (West 2016)) on January 8, 2018.  In its motion, Chicago argued that under section 2-615 (735 ILCS 5/2-615 (West 2016)) that plaintiffs' claims failed as a matter of law because the impoundment ordinance was not inconsistent with state law and was therefore not preempted by state law.  Chicago additionally argued under section 2-619 (735 ILCS 5/2-619 (West 2016)) that plaintiffs failed to seek administrative review of the ALO's decisions, and further that Daniels

failed to exhaust his administrative remedies; accordingly, the circuit court lacked jurisdiction to hear plaintiffs' claims.

¶ 17    Plaintiffs sought leave to file a first amended complaint on February 20, 2018. Chicago filed a motion to stay discovery pending resolution of its motion to dismiss pursuant to Rule 201(c)(1) (Ill. S. Ct. R. 201(c)(1) (eff. May 29, 2014)), because the motion to dismiss was based on law not fact, therefore there was no purpose for discovery as it could not lead to any admissible facts. That rule allows the court on its own initiative or on motion of any party or witness to make a protective order denying, limiting, conditioning or regulating discovery to prevent unreasonable annoyance, expense, embarrassment, disadvantage, or oppression.  Ill. S. Ct. R. 201(c)(1) (eff. May 29, 2014). On February 26, 2018, the circuit court denied plaintiffs' motion to amend their complaint without prejudice, and continued Chicago's motion to stay discovery. [3]

¶ 18    A hearing on Chicago's motion to dismiss was held on January 17, 2019, after which the circuit court took the matter under advisement. The circuit court also granted plaintiffs leave to file the legislative history for section 11-208.7, which was filed on January 18, 2019.

¶ 19    On November 8, 2019, in a written memorandum opinion and order, the circuit court granted Chicago's motion to dismiss plaintiffs' complaint in its entirety and with prejudice. The court found that section 11-208.7 of the Vehicle Code did not restrict Chicago's imposition of administrative penalties because that section governed fees, not penalties, and therefore did not interact with the impoundment ordinance's penalty provisions. The court additionally found that section 11-208.7 did not restrict Chicago, as a home rule entity, from implementing its own hearing

---

[3] The record does not indicate any disposition of Chicago's motion to stay discovery.

and notice scheme. The court further stated that, even if section 11-208.7 applied, its notice provisions were directory, and no violation was actionable. The circuit court concluded that, because the remaining claims were derivative, once the core declaratory judgment claim is dismissed with prejudice, so too must the rest. The court added that its decision did not preclude plaintiffs from challenging their specific impoundments through the administrative process if they desired to do so.

¶ 20      Plaintiffs filed their timely notice of appeal on November 26, 2019.

¶ 21                                    DISCUSSION

¶ 22      On appeal, plaintiffs contend that: (1) the impoundment order is preempted by 625 ILCS 5/11-208.7 (West 2016); (2) Daniels was deprived of his right to a hearing; (3) the circuit court's stay of plaintiffs' limited discovery requests was an abuse of discretion; and (4) the circuit court erred in granting Chicago's motion to dismiss and in denying plaintiffs' motion for leave to amend.

¶ 23                          A.  Overall Standard of Review

¶ 24      This is an appeal from the trial court's grant of Chicago's section 2-615 (735 ILCS 5/2-615 (West 2016)) motion to dismiss plaintiffs' complaint in its entirety with prejudice. A section 2-615 motion to dismiss challenges the legal sufficiency of a complaint based on defects apparent on its face. *Pooh-Bah Enterprises, Inc. v. County of Cook*, 232 Ill. 2d 463, 473 (2009). A cause of action should not be dismissed pursuant to a section 2-615 motion unless it is clearly apparent that no set of facts can be proved that would entitle the plaintiff to relief. *Id.* In ruling on such a motion, only those facts apparent from the face of the pleadings, matters of which the court can take judicial notice, and judicial admissions in the record may be considered. *Id.* We accept as true all well-pleaded facts and all reasonable inferences that may be drawn from those facts. *Id.* However, a

plaintiff may not rely on mere conclusions of law or facts unsupported by specific factual allegations. *Id.* We review *de novo* an order granting a section 2-615 motion to dismiss. *Id.*

¶ 25            B.   Preemption of Chicago's Impoundment Ordinance by the Illinois Vehicle Code

¶ 26    Plaintiffs first contend that the impoundment ordinance as a whole is preempted by section 11-208.7 of the Vehicle Code (625 ILCS 5/2-11.208.7 (West 2016)), and further that its notice provisions conflict with, and are preempted by it.  They make several arguments in support of these contentions, namely that: (1) any inconsistent exercise of home rule power is preempted; and (2) the impoundment ordinance is inconsistent with section 11.208.7.

¶ 27    In order to address plaintiffs' issue on appeal, we must construe the statutory and ordinance provisions at issue. We construe statutes and municipal ordinances under the same principles. *Sullivan v. Village of Glenview*, 2020 IL App (1st) 200142, ¶ 23. We must ascertain and give effect to the intent of the legislative body. *Id.* at ¶ 24.  We start with the plain language of the ordinance, given its ordinary meaning.  *Id.*  If the statute or ordinance is unambiguous, the judicial inquiry ends; we apply the language as written.  *Id.*  If, however, we find ambiguity in the language, we may resort to extrinsic aids to determine legislative intent. *Id.*

¶ 28    One of the fundamental principles of statutory construction is to view all provisions of an enactment as a whole. *Brucker v. Mercola*, 227 Ill 2d 502, 514 (2007). Accordingly, words and phrases must be interpreted in light of other relevant provisions of the statute and not construed in isolation. *Id.* Additionally, we interpret statutes as a whole, rejecting an interpretation that exalts one provision of a statutory scheme over another. *Van Milligan v. Department of Employment Security*, 373 Ill. App. 3d 523, 538-39 (2007).

¶ 29     In the case at bar, our determination involves a purely legal question. Pure questions of law, including questions of statutory construction, are reviewed *de novo*. *Solomon v. Scholefield*, 2015 IL App (1st) 150685, ¶ 15.

¶ 30                                    1. Home Rule Jurisprudence

¶ 31     Plaintiffs contend that the impoundment ordinance is an invalid exercise of Chicago's home rule, while Chicago contends that it is not. Home rule is based on the assumption that municipalities should be allowed to address problems with solutions tailored to their local needs. *Palm v. 2800 Lake Shore Drive Condominium Ass'n*, 2013 IL 110505, ¶ 29. The home rule provisions of the 1970 Illinois Constitution were designed to drastically alter the relationship between our local and state governments. *Id.* Article VII, section 6(a) of the Illinois Constitution provides:

> "Except as limited by this Section, a home rule unit may exercise any power and perform any function pertaining to its government and affairs including, but not limited to, the power to regulate for the protection of the public health, safety, morals and welfare; to license; to tax; and to incur debt." Ill. Const. 1970, art. VII, §6(a).

¶ 32     Section 6(a) was intended to give home rule units the broadest powers possible. *Palm*, 2013 IL 110505, ¶ 30. The Illinois Constitution also provides that the powers and functions of home rule units shall be construed liberally. Ill. Const. 1970, art. VII, §6(m).

¶ 33     However, the General Assembly may preempt the exercise of a municipality's home rule powers by expressly limiting that authority. *Palm*, 2013 IL 110505, ¶ 31. Under article VII, section 6(h), the General Assembly "may provide specifically by law for the exclusive exercise by the State of any power or function of a home rule unit." Ill. Const. 1970, art. VII, §6(h). If the

legislature intends to limit or deny the exercise of home rule powers, the statute must contain an express statement to that effect. *Palm*, 2013 IL 110505, ¶ 31. If a statute does not expressly limit or deny home rule authority, a municipal ordinance and a state statute may operate concurrently as provided in article VII, §6(i):

> "Home rule units may exercise and perform concurrently with the State any power or function of a home rule unit to the extent that the General Assembly by law does not specifically limit concurrent exercise or specifically declare the State's exercise to be exclusive." Ill. Const. 1970, art. VII, §6(i).

¶ 34    Under that section, home rule units may continue to regulate activities even if the state has also regulated those activities. *Palm*, 2013 IL 110505, ¶ 32. To restrict the concurrent exercise of home rule power, the General Assembly must enact a law specifically stating home rule authority is limited. *Id.*   The General Assembly has codified that principle in section 7 of the Statute on Statutes, providing:

> "No law enacted after January 12, 1977, denies or limits any power or function of a home rule unit, pursuant to paragraphs (g), (h), (i), (j) or (k) of section 6 of Article VII of the Illinois Constitution, unless there is specific language limiting or denying the power or function and the language specifically sets forth in what manner and to what extent it is a limitation on or denial of the power or function of a home rule unit." 5 ILCS 70/7 (West 2016).

¶ 35    Our supreme court has formally adopted section 7 as part of its home rule jurisprudence in *Schillerstrom Homes, Inc. v. City of Naperville*, 198 Ill. 2d 281, 287 (2001). Moreover, the legislature has enacted the Home Rule Note Act, which provides that "[e]very bill that denies or

limits any power or function of a home rule unit shall have prepared for it before second reading in the house of introduction a brief explanatory note that includes a reliable estimate of the probable impact of the bill on the powers and functions of home rule units." 25 ILCS 75/5 (West 2016). Our supreme court has interpreted that provision as the legislature's recognition of its principal role in determining whether to preempt or limit home rule power and its responsibility to use specific language when doing so. *Palm*, 2013 IL 110505, ¶ 33.

¶ 36　Further, our supreme court has consistently recognized that the home rule provisions of the Illinois Constitution are intended to " 'eliminate or at least reduce to a bare minimum the circumstances under which local home rule powers are preempted by judicial interpretation of unexpressed legislative intention.' " *Palm*, 2013 IL 110505, ¶ 34 (quoting *Scadron v. City of Des Plaines*, 153 Ill. 2d 164, 186 (1992), [Citation.]); *Schillerstrom Homes*, 198 Ill. 2d at 288. As such, our supreme court has concluded that if the constitutional design is to be respected, the courts should step in only in the clearest cases of oppression, injustice, or interference by local ordinances with vital state policies. *Scadron*, 153 Ill. 2d at 190.

¶ 37　　　　　　　　　　　2. Relevant Statutory Framework

¶ 38　We now turn our attention to the relevant ordinance and statutory framework at issue in the case at bar.

¶ 39　Section 1-2.1-2 of the Illinois Municipal Code (Municipal Code) provides as follows:

　　　　"Administrative adjudications of municipal code violations. Any municipality may provide by ordinance for a system of administrative adjudication of municipal code violations to the extent permitted by the Illinois Constitution. A "system of administrative adjudication" means the adjudication of any violation of a municipal ordinance, except for

(i) proceedings not within the statutory or the home rule authority of municipalities; and (ii) any offense under the Illinois Vehicle Code or a similar offense that is a traffic regulation governing the movement of vehicles and except for any reportable offense under section 6-205 of the Illinois Vehicle Code. 65 ILCS 5/1-2.1-2 (West 2016).

¶ 40    Chicago's impoundment ordinance is codified in Chicago Municipal Code section 2-14-132. The portions of the impoundment ordinance relevant to this appeal provide as follows:

"(a)(1) Whenever the owner of a vehicle seized and impounded pursuant to * * * (for purposes of this section, the 'status-related offense sections'), or * * * (for purposes of this section, the 'use-related offense sections') requests a preliminary hearing in person and in writing at the department of administrative hearings, within 15 days after the vehicle is seized and impounded, an administrative law officer of the department of administrative hearings shall conduct such preliminary hearing within 48 hours of request, excluding Saturdays, Sundays and legal holidays, unless the vehicle was seized and impounded pursuant to Section 7-24-225 and the department of police determines that it must retain custody of the vehicle under the applicable state or federal forfeiture law. If, after the hearing, the administrative law officer determines that there is probable cause to believe that the vehicle was used in a violation of this Code for which seizure and impoundment applies, or, if the impoundment is pursuant to Section 9-92-035, that the subject vehicle is eligible for impoundment under that section, the administrative law officer shall order the continued impoundment of the vehicle as provided in this section unless the owner of the vehicle pays to the city the amount of the administrative penalty prescribed for the code violation plus fees for towing and storing the vehicle.

* * *

(b)(1) Within ten days after a vehicle is seized and impounded the department of streets and sanitation or other appropriate department shall notify by certified mail the owner of record (other than a lessee who does not hold title to the vehicle), the person who was found to be in control of the vehicle at the time of the alleged violation, and any lienholder of record, of the owner's right to request a hearing before the department of administrative hearings to challenge whether a violation of this Code for which seizure and impoundment applies has occurred or, if the impoundment is pursuant to Section 9-92-035, whether the subject vehicle is eligible for impoundment under that section. In the case where an owner of record is a lessee who does not hold title to the vehicle, the notice shall be mailed to such lessee within ten days after the department of streets and sanitation receives a copy or other satisfactory evidence of the vehicle lease or rental agreement, indicating the name, address, and driver's license number of the lessee pursuant to subsection (i). However, no such notice need be sent to the owner of record if the owner is personally served with the notice within ten days after the vehicle is seized and impounded, and the owner acknowledges receipt of the notice in writing. A copy of the notice shall be forwarded to the department of administrative hearings. The notice shall state the penalties that may be imposed if no hearing is requested, including that a vehicle not released by payment of the penalty and fees and remaining in the city pound may be sold or disposed of by the city in accordance with applicable law.

(2) The owner of record seeking a hearing must file a written request for a hearing with the department of administrative hearings no later than 15 days after notice was

mailed or otherwise given under this subsection. The hearing date must be no more than 30 days after a request for a hearing has been filed.

(3)(A) If, after the hearing, the administrative law officer determines by a preponderance of the evidence that the vehicle was used in the violation, or, if the impoundment is pursuant to Section 9-92-035, that the subject vehicle was properly impounded under that section, the administrative law officer shall enter an order finding the owner of record liable to the city for the amount of the administrative penalty prescribed for the violation, plus towing and storage fees.

\* \* \*

(4) If the owner of record requests a hearing but fails to appear at the hearing or fails to request a hearing in a timely manner, the owner of record shall be deemed to have waived his or her right to a hearing and an administrative law officer of the department of administrative hearings shall enter a default order in favor of the city in the amount of the administrative penalty prescribed for the violation, plus towing and storage fees. However, if the owner: (i) redeemed the vehicle by payment of the appropriate penalty and fees, and (ii) was notified of the owner's right to request a hearing, and (iii) failed to timely request a hearing, then the payment shall be deemed an acknowledgment of liability and no adjudication shall be required.

(5) For the purposes of this section and those sections referenced in subsection (a), the terms "seizure and impoundment" and "seized and impounded" shall be deemed to also refer to a vehicle that a police officer or other authorized city agent or employee determines is subject to impoundment because there is probable cause to believe it was

used in violation of one or more of those sections listed in subsection (a), regardless of whether the vehicle is actually towed to and held at a city facility.

(c)(1) An administrative penalty, plus towing and storage fees, imposed pursuant to this section shall constitute a debt due and owing to the city which may be enforced pursuant to Section 2-14-103 or in any other manner provided by law. Any amounts paid pursuant to this section shall be applied to the penalty. Except as provided otherwise in this section, a vehicle shall continue to be impounded until:

(A) the payment of the administrative penalty, plus any applicable towing and storage fees, plus all amounts due for outstanding final determinations of parking, standing compliance, automated traffic law enforcement system or automated speed enforcement system violations incurred by the owner, including all related collection costs and attorney's fees authorized under Section 1-19-020. Upon payment, possession of the vehicle shall be given to the person who is legally entitled to possess the vehicle; or

(B) the vehicle is sold or otherwise disposed of to satisfy a judgment or enforce a lien as provided by law. * * *" Municipal Code of Chicago, Ill. §§ 2-14-132 (a)(1), (b)(1)-(5), (c)(1) (Amend Coun. J. November 11, 2016).

¶ 41    Several sections of the Vehicle Code are also applicable to our discussion.

¶ 42    Section 11-207 provides as follows:

"Provisions of this Chapter uniform throughout State. The provisions of this Chapter shall be applicable and uniform throughout this State and in all political subdivisions and municipalities therein, and no local authority shall enact or enforce any

ordinance rule or regulation in conflict, with the provisions of this Chapter unless expressly authorized herein. Local authorities, may, however, adopt additional traffic regulations which are not in conflict with the provisions of this Chapter, but such regulations shall not be effective until signs giving reasonable notice thereof are posted." 625 ILCS 5/11-207 (West 2016).

¶ 43    Section 11-208.2 provides as follows:

"Limitations on home rule units. The provisions of this Chapter of this Act limit the authority of home rule units to adopt local police regulations inconsistent herewith except pursuant to Sections 11-208, 11-209, 11-1005.1, 11-1412.1, and 11-1412.2 of this Chapter of this Act."  625 ILCS 5/11-208.2 (West 2016).

¶ 44    Section 11.208.7 provides as follows:

"Administrative fees and procedures for impounding vehicles for specified violations.  (a) Any county or municipality may, consistent with this Section, provide by ordinance procedures for the release of properly impounded vehicles and for the imposition of a reasonable administrative fee related to its administrative and processing costs associated with the investigation, arrest, and detention of an offender, or the removal, impoundment, storage, and release of the vehicle. The administrative fee imposed by the county or municipality may be in addition to any fees charged for the towing and storage of an impounded vehicle. The administrative fee shall be waived by the county or municipality upon verifiable proof that the vehicle was stolen at the time the vehicle was impounded.

(b) An ordinance establishing procedures for the release of properly impounded vehicles under this Section may impose fees only for the following violations:

\* \* \*

(2) driving under the influence of alcohol, another drug or drugs, an intoxicating compound or compounds, or any combination thereof, in violation of Section 11-501 of this Code; or

\* \* \*

(6) driving while a driver's license, permit, or privilege to operate a motor vehicle is suspended or revoked pursuant to Section 6-303 of this Code;

\* \* \*

(f) Any ordinance establishing procedures for the impoundment and release of vehicles under this Section shall include a provision providing that the registered owner or lessee of the vehicle and any lienholder of record shall be provided with a notice of hearing. The notice shall:

(1) be served upon the owner, lessee, and any lienholder of record either by personal service or by first class mail to the interested party's address as registered with the Secretary of State;

(2) be served upon interested parties within 10 days after a vehicle is impounded by the municipality; and

(3) contain the date, time, and location of the administrative hearing. An initial hearing shall be scheduled and convened no later than 45 days after the date of the

mailing of the notice of hearing. * * *" 625 ILCS 5/11-208.7(a)-(b)(2), (6), (f) (West 2016).

¶ 45                                   3. Analysis

¶ 46    We begin by noting, as pointed out by Chicago, that plaintiffs did not contest Chicago's ability to enact the impoundment ordinance in 1998, only that it was subsequently preempted by the enactment of section 11-208.7. We disagree.

¶ 47    The impoundment ordinance at issue was adopted by Chicago, which is a home rule unit of local government. Ill. Const. 1970, art. VII, §6(a). Home rule is based on the assumption that municipalities should be allowed to address problems with solutions tailored to their local needs. *Palm*, 2013 IL 110505, ¶ 29. As such, a home rule unit may exercise any power and perform any function pertaining to its government and affairs, including activities regulated by the State. *Id.* at ¶ 32. The Illinois Constitution gives home rule units the broadest powers possible, to the extent that the General Assembly does not specifically limit the concurrent exercise of those powers or specifically declare the State's exercise to be exclusive. *City of Chicago v. Roman*, 184 Ill. 2d 504, 513 (1998). Additionally, those powers are to be construed liberally. Ill. Const. 1970, art. VII, § 6(m); *Shachter v. City of Chicago*, 2016 IL App (1st) 150442, ¶ 40.

¶ 48    Also as noted above, if the legislature did not specifically limit or deny home rule authority, a municipal ordinance and a state statute may operate concurrently as provided by the Illinois Constitution. Ill. Const. 1970, art. VII, § 6(i). Additionally, such limitation or denial of home rule authority must be expressly stated. *Shachter*, 2016 IL App (1st) 150442, ¶ 41.

¶ 49    Section 11-208.7 expressly provides that any county or municipality may, consistent with its provisions, enact ordinances with procedures for the release of properly impounded vehicles

and for the imposition of a reasonable administrative fee, in addition to any towing or storage fees for impounded vehicles. 625 ILCS 5/11-208.7 (West 2016). By its plain language, Section 11-208.7 allows a county or municipality to impose administrative fees. However, contrary to plaintiffs' assertion, nowhere in that section is there an explicit limitation on the power of a home rule unit to charge an administrative penalty or fine for the underlying violation that led to the impoundment of the vehicle. As noted above, when construing a statute, we give words their plain and ordinary meaning and if the statute is unambiguous, we apply the language as written. *Sullivan*, 2020 IL App (1st) 200142, ¶ 24. The plain language of section 11-208.7 provides for the collection of an administrative fee and does not preclude a home rule unit from imposing a fine.

¶ 50 This conclusion is further supported by the Municipal Code, which grants municipalities the ability to create a system of administrative adjudication of municipal code violations by ordinance in sections 1-2.1-2. 65 ILCS 5/1-2.1-2 (West 2016). Moreover, our supreme court has previously found that home rule units have the power to impose fines under the Illinois Constitution. See *Roman*, 184 Ill. 2d at 513-14 (home rule units do not have the power to define and punish felonies but are free to impose fines and jail sentences for less serious offenses). The impoundment ordinance is not inconsistent with the Vehicle Code and operates concurrently with the Vehicle Code. Accordingly, we hold that Chicago, as a home rule unit, was not preempted by the Vehicle Code from imposing an administrative penalty or fine in its impoundment ordinance, and further that enactment of such ordinance was a valid exercise of is home rule powers.

¶ 51 The same conclusion is warranted for plaintiffs' contention that the impoundment ordinance's notice provisions are inconsistent with section 11-208.7. The impoundment ordinance provides that the owner will be notified within 10 days by certified mail that the vehicle has been

impounded as well as their right to have a hearing. Section 11-208.7 similarly provides that there should be a reasonable attempt to notify the owner or lessee of the facts of the seizer and of their right to an administrative hearing; no time period is specified. The impoundment ordinance further allows the owner or lessee to request a hearing, within 15 days after the notice of impoundment was given, with such hearing to be no more than 30 days later. Section 11-208.7 provides that notice of a hearing shall be served by first class mail within 10 days after the impoundment and that the hearing shall be held no later than 45 days after the date of mailing of such notice. A reading of the plain language of the two provisions yields the conclusion that they are not inconsistent with one another.

¶ 52    Moreover, we find, as did the circuit court, that the notice provisions of section 11.208.7 are directory rather than mandatory where there is an absence of language specifying a particular consequence of noncompliance with the provision. *Lakewood Nursing and Rehabilitation Center, LLC v. Department of Public Health*, 2019 IL 124019, ¶ 33. A mandatory construction is supported only where the statute precludes further action and imposes a specific consequence in the event of noncompliance. *Id.* at ¶ 36. We also look to whether the right that the statute is designed to protect will be injured by a directory construction. *Id.* at ¶ 44.  Here, the only rights referenced in section 11-208.7 are those of owners or lessees to receive notice of the right to a hearing and notice of the hearing upon impoundment of their vehicles, and we do not find those rights to be generally injured by a directory construction.

¶ 53    We further disagree with plaintiffs' argument that the circuit court failed to consider the application of the limitation on home rule units in section 11-208.2 to section 11-208.7. Plaintiffs contend that Chapter 11 applies uniformly throughout the State pursuant to two uniformity

provisions, and further that there is an express limiting provision on home rule units set forth in section 11-208.2 which excludes five specific sections that does not include section 11-208.7. Plaintiffs concede that none of the five exceptions are applicable to the present case.

¶ 54 Plaintiffs' conclusion that Chicago's ordinance is inconsistent with any provision of Chapter 11 is misplaced. Plaintiffs have not shown how the impoundment ordinance conflicts with any portion of Chapter 11, including section 11-208.2. Further, we have already concluded that section 11-208.7 did not preclude Chicago from enacting an ordinance to collect administrative penalties. We therefore find that the impoundment ordinance did not preclude Chicago from enacting the impoundment ordinance.

¶ 55 In light of our conclusion that the impoundment ordinance is not preempted by or inconsistent with section 11-208.7, it follows that Chicago's motion to dismiss was properly granted pursuant to section 2-615 (735 ILCS 5/2-615 (West 2016)) where plaintiffs have not asserted claims for which relief could be granted as a matter of law.

¶ 56                                C. Stay of Discovery

¶ 57 Plaintiffs also contend that the circuit court abused its discretion in staying discovery on Chicago's motion. As noted above, the record contains no record of an order of the circuit court granting Chicago's motion to stay discovery.

¶ 58 Even assuming that the circuit court had granted Chicago's motion to stay discovery, a circuit court may properly stay or quash a discovery request when it has sufficient information upon which to rule on a motion to dismiss. *Evitts v. DaimlerChrysler Motors Corp.*, 359 Ill. App. 3d 504, 513 (2005). A court should not refuse a discovery request and grant a motion to dismiss where it reasonably appears discovery might assist the nonmoving party. *Id.* at 513-14. Discovery

is not necessary where a cause of action has not been stated. *Id*. at 514. Decisions concerning discovery motions are reviewed for an abuse of discretion. *Id*. at 513.

¶ 59 Here, Chicago filed a section 2-619.1 (735 ILCS 5/2-619.1 (West 2016)) motion to dismiss based on the pleadings, which alleged grounds for dismissal under 2-615 (735 ILCS 5/2-615 (West 2016)), failure to state a claim, and section 2-619 (735 ILCS 5/2-619 (West 2016)), the existence of an affirmative defense. The decision in this case turned on whether plaintiff's complaint was sufficient to state a cause of action, and whether an affirmative defense existed, regardless of any extrinsic evidence produced by discovery. Plaintiffs' discovery request sought Chicago's report to the legislature regarding the actual costs incurred by Chicago for administrative functions associated with the impoundment of vehicles, which would not supply evidence to support its cause of action as to whether section 11-208.7 preempted the impounded ordinance or contradict Chicago's affirmative defense. Such evidence would not have assisted plaintiffs in surviving the motion to dismiss, and the grant of such stay would not have been an abuse of the circuit court's discretion.

¶ 60                                     D. Leave to File First Amended Complaint

¶ 61 Finally, plaintiffs contend that the circuit court erred by denying their motion for leave to amend their complaint and for finding that no set of facts can be proven as a predicate to relief. Plaintiffs' proposed first amended complaint sought to add an additional plaintiff, and raised count I (declaratory judgment that the impoundment ordinance was preempted by section 11-208.7); count II (declaratory judgment that the City lacked jurisdiction to hold administrative hearings based on the impoundment ordinance if section 11-208.7 did not apply to home rule jurisdictions); count III (injunctive relief); count IV (unjust enrichment); count V (unjust enrichment based on

lack of jurisdiction if section 11-208.7 did not apply to home rule jurisdictions); and count VI (conversion). The record indicates that the circuit court initially denied plaintiffs' motion to amend without prejudice before ultimately granting Chicago's motion to dismiss with prejudice. The record does not indicate that plaintiffs refiled their motion for leave to amend the complaint; nor did they file a motion to reconsider prior to filing their notice of appeal.

¶ 62    When a complaint is dismissed with prejudice and does not include a statement allowing the plaintiff leave to amend, an involuntary dismissal order is final. *Compton v. Country Mutual Insurance Co.*, 382 Ill. App. 3d 323, 332 (2008). Where the circuit court's dismissal of plaintiffs' complaint constituted a final judgment, they had no statutory right to amend. *Id.* Additionally, as previously noted, the record does not indicate that plaintiffs ever renewed their motion for leave to amend, despite verbal discussion before the circuit court. Further, the grant of Chicago's motion to dismiss on the basis that the complaint failed to state a cause of action was a determination that there was no claim on which relief could be granted as a matter of law. Plaintiffs' adding of an additional plaintiff and additional counts based on the City's lack of jurisdiction to hold administrative hearings under the impoundment ordinance would, therefore, not cure a defective pleading, but would create an entirely different pleading. *Id.* at 333. We conclude that it was not error for the circuit court to deny plaintiff leave to file a first amended complaint.

¶ 63                              CONCLUSION

¶ 64    For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

¶ 65    Affirmed.